FILED

IN THE UNITED STATES DISTRICT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2017 DEC 18 PM 4: 45

Case No.:

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

WILLIAM WASHINGTON,
    Petitioner,

6:17-cv-2163-ORL-22GJK

v.

REED MOTORS, INC.
d/b/a REED NISSAN,
    Respondent.
_____/

## PETITION FOR ORDER VACATING ARBITRATION AWARD

COMES NOW Petitioner, WILLIAM WASHINGTON ("Petitioner"), by and through the undersigned attorneys and pursuant to 9 U.S.C. § 10(a), and files this Petition for Order Vacating Arbitration Award ("Petition"), and in support thereof states as follows:

### JURISDICTION AND PARTIES

1. This Petition seeks vacatur and rehearing following an arbitration award sent to the parties via electronic mail by the American Arbitration Association ("AAA") on September 18, 2017 in Orlando, Orange County, Florida in the matter of the arbitration between Petitioner and Reed Motors, Inc. d/b/a Reed Nissan ("Respondent"). (Attached hereto as Exhibit A).

2. The jurisdiction of this United States Court in and for the district wherein the award was made is invoked pursuant to 9 U.S.C. § 10(a).

3. Petitioner is an individual and citizen of the state of Georgia.

1

4. Respondent is a Florida corporation authorized to conduct business in the State of Florida and at all times material hereto was engaged in the regular practice of selling motor vehicles as a licensed motor vehicle dealer in Orange County, Florida.

## PROCEDURAL POSTURE

5. Following Petitioner's purchase of a 2016 Nissan Titan XD bearing VIN: 1N6AA1F42GN508031 ("vehicle"), Petitioner brought an action in front of AAA seeking damages from Respondent for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), specifically Fla. Stat. 501.976(3), (4), and (19), Fraud, and Negligent Misrepresentation.

6. Petitioner now seeks relief from the arbitration award denying Petitioner's damage claims pursuant to Fla. Stat. 501.976(3) and (19).

7. Specifically, Petitioner challenges the award in favor of Respondent on Petitioner's claim that the vehicle's status was represented as "new" when in fact the vehicle was a "demonstrator" as defined in Fla. Stat. 320.60(3).

8. Contrary to the parties' stipulation that the vehicle was a "demonstrator" in status, the arbitration award arbitrarily found that the vehicle was "new" in status.

9. Additionally, Petitioner challenges the award in favor of Respondent on Petitioner's claim that Respondent failed to disclose prior repairs in violation of its statutory obligation to make such disclosures by accepting an Respondent's invalid affirmative defense.

## LEGAL BASIS FOR VACATUR

10. This Court's review of commercial arbitration awards is controlled by the Federal Arbitration Act ("FAA"). 9 U.S.C.A. §§ 1-16. The FAA enumerates four statutory grounds for vacating an arbitration decision.[1]

11. In addition, the US court of Appeals for the Eleventh Circuit has recognized this Court's authority to vacate an arbitration award on two non-statutory grounds. Montes v. Shearson Lehman Bros., 128 F.3d 1456, 1458 (11th Cir. 1997).

12. First, an arbitration award may be vacated if it is arbitrary and capricious. Ainsworth v. Skurnick, 960 F.2d 939, 941 (11th Cir.1992), cert. denied, 507 U.S. 915, 113 S. Ct. 1269, 122 L. Ed. 2d 665 (1993); Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 1410, 1413 (11th Cir.1990); United States Postal Serv. v. National Ass'n of Letter Carriers, 847 F.2d 775, 778 (11th Cir.1988).

13. Second, an arbitration award may be vacated if enforcement of the award is contrary to public policy. Delta Air Lines, Inc. v. Air Line Pilots Ass'n, 861 F.2d 665, 671 (11th Cir.1988), cert. denied, 493 U.S. 871, 110 S. Ct. 201, 107 L. Ed. 2d 154 (1989); U.S. Postal Service, 847 F.2d at 777.

14. The underlying arbitration award is arbitrary and capricious because it shows a clear disregard for the law. Such a departure from the law, particularly a law in place to protect against deception and unfair trade practices, is contrary to public policy.

## RELEVANT FACTS IN SUPPORT OF VACATUR

---

[1] (1)where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or if any other misbehavior by which the rights of any party may have been prejudiced; (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a).

3

15. Petitioner purchased the vehicle from Respondent on or about January 27, 2015, and the parties entered into a written contract drafted by Respondent for the sale and purchase of the vehicle. The contract contains an unambiguous "merger clause".

16. The contract expressly describes the vehicle's status as "new" when, in fact, the vehicle's status was "demonstrator" as defined by Florida statute.[2]

17. Not only was the vehicle a demonstrator, the vehicle had already been subject to several significant repairs, including replacement of a rear taillight and a repainting of the lift gate.

18. The repairs followed pre-sale damage sustained during delivery to the Respondent, and Nissan North America, the vehicle's manufacturer assumed responsibility for the cost of repairs.

19. Respondent performed the repairs and submitted an invoice to Nissan seeking reimbursement of Respondent's alleged cost to repair the damage in the amount of $1,012.12. Nissan subsequently reimbursed Respondent for the full amount of $1,012.12.

20. Respondent failed to disclose the prior repair as statutorily required for repairs over $650.00.[3]

21. Respondent did not dispute any of the relevant facts above. Rather, Respondent defended the status misrepresentation claim in the affirmative by asserting that the

---

[2] "Demonstrator" means any new motor vehicle that is carried on the records of the dealer as a demonstrator and is used by, being inspected or driven by the dealer or his or her employees, or driven by prospective customers for the purpose of demonstrating vehicle characteristics in the sale of display of motor vehicles sold by the dealer." Fla. Stat. 320.60(3).

[3] It is an unfair or deceptive trade practice for a dealer to "fail to disclose damage to a new motor vehicle as definied in s. 319.001(9), of which the dealer had actual knowledge, if the dealer's actual cost of repairs exceeds the threshold amount, excluding replacement items. Fla. Stat. 501.976(19). The parties stipulated that the applicable threshold amount for disclosure is $650.00 for this vehicle.

4

misrepresentation as "new" and not "demonstrator" was inadvertent, technical, and/or harmless because the correct status was disclosed during sales negotiations prior to the contract.

22. In addition to admitting the contract incorrectly identified the vehicle as "new" instead of "demonstrator" on the contract, Respondent clearly admitted to the Arbitrator that the vehicle was, in fact, a demonstrator and should have been disclosed as such.[4]

23. In defense of its failure to disclose the prior repair, Respondent asserted disclosure was not required because the cost was under the $650.00 threshold.

24. The only evidence presented by Respondent in an attempt contradict its own documents showing repair cost in the amount of $1,012.12 was testimony from Respondent's corporate representative asserting that Respondent intentionally inflated the repair amount to profit from the incident at Nissan's expense. Respondent argued that the actual internal cost to the dealer were less than $650.00 and were not documented in writing.

25. Respondent does not dispute that the actual cost of repair of the presale damage by Nissan was $1,012.12.

26. In the arbitration award, the Arbitrator completely ignored the Respondent's admissions and the evidence.

---

[4]During the arbitration hearing, Respondent's corporate representative Aaron Hill testified as follows: Q: You admit that this was a demo vehicle? A: Yes. Q: Okay. And you know that you're required to put "new," "used," or "demo" on the sales paperwork; is that right? A: It is required. Q: Okay. So this was not correctly put on the paperwork as a demo? A: Because the process was incorrectly done or because I got pulled out the there early, yes. Q: Okay. So you know that it says "new" on the retail installment sales contract? A: Until the vehicle gets switched over as a seven. Q: So is that just a "yes?" You know it says "new" on there? A: Yes. Q: Okay. I just want to be clear for the record. A: Sure. Q: And you know that it's supposed to say "demo?" A: Yes. Q: Okay. So that's wrong on the contract, right? A: The contract does have an incorrect status on there. (Arbitration Hearing Transcript Vol. 2 pg. 51-52).

5

27. The arbitrator made a finding that the vehicle was **not** a "demonstrator" and denied Petitioner's claim under 501.976(3) completely ignoring the fact that both parties agreed the vehicle was in fact a "demonstrator" vehicle.

28. Additionally, the arbitrator ignored the evidence and the statutory language in 501.976(19). In doing so, the arbitrator accepted Respondent's curious position that the misrepresentations Respondent made to Nissan excused respondent from disclosing the prior repair to unsuspecting consumers.

## ARGUMENT

When a claim arises under specific laws, however, the arbitrators are bound to follow those laws in the absence of a valid and legal agreement not to do so. As the Supreme Court has stated, "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 1652, 114 L. Ed. 2d 26 (1991)(quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S. Ct. 3346, 3354-55, 87 L. Ed. 2d 444 (1985)). Similarly, in Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987), the Court stated "we have indicated that there is no reason to assume at the outset that arbitrators will not follow the law; although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute," id. at 232, 107 S. Ct. at 2340 (citing to and summarizing Mitsubishi Motors). Montes v. Shearson Lehman Bros., 128 F.3d 1456, 1459-1460, (11th Cir. 1997). Petitioner as a party to arbitration can obtain relief from a federal court where the arbitration award was made in manifest disregard of

6

the law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S. Ct. 1920, 1923, 131 L. Ed. 2d 985 (1995).

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), sections 501.201-203, Florida Statutes is intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. See Fla. Stat. § 501.202(2); see also Delgado v. J.W. Courtesy Pontiac GMC-Truck, 693 So.2d 602, 605 (Fla. 2d DCA 1997). The Florida legislature created FDUTPA with the intent that it be liberally construed to promote the protection of the consuming public. See Id. A deceptive practice is one that is likely to mislead consumers. See Davis v. Powertel, Inc., 776 So.2d 971, 974 (Fla. 1st DCA 2000). To prove that a business has engaged in a deceptive practice, a consumer need not prove the elements of fraud to sustain an action under FTUTPA. Id. (citing W.S. Badcock Corp. v. Myers, 696 So.2d 776 (Fla. 1st DCA 1996)). This is so because the issue is not whether the consumer actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably under the same circumstances. Id. An unfair practice is one that offends established public policy, and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See Samuels v. King Motor Co., 782 So.2d 489, 499 (Fla. 4th DCA 2001).

Florida Statute section 501.976 also defines what actionable, unfair, or deceptive acts or practices are. It is a violation of FDUTPA for a motor vehicle dealer to make representations as to the previous usage or status of a vehicle to be something that it was not, or make usage or status representations unless the dealer has correct information regarding the history of the vehicle to support any such representations. Fla. Stat. § 501.976(3).

The judicially-created "manifest disregard of law" basis for vacating an arbitration award was defined by the Eleventh Circuit. "Manifest" means "evident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden". Wachovia, 918 So.2d at 1007 (quoting Black's Law Dictionary 962 (6th ed. 1990). "Disregard" means "to treat as unworthy of regard or notice; to take no notice of; to leave out of consideration; to ignore; to overlook; to fail to observe". Id. To manifestly disregard the law, an arbitrator must be conscious of the law and deliberately ignore it. Wachovia, 918 So. 2d at 1007. Further, a manifest disregard of law occurs where there is a clearly-defined legal principle that is not subject to reasonable debate, and the arbitrator refuses to heed that legal principle. Id.

### *Respondent had a Duty to Disclose Past Damage to the Vehicle, and the Arbitration Award in Favor of Respondent Departs from the Law and Violates Public Policy*

Florida Statute section 501.976(19) makes it an unfair or deceptive act or practice for a motor vehicle dealer to fail to disclose damage to a new motor vehicle of which the dealer had actual knowledge, if the dealer's actual cost of repairs exceeds the threshold amount, excluding replacement items. See Fla. Stat § 501.976(19). The threshold amount is three percent (3%) of the manufacturer's suggested retail price (MSRP) of a motor vehicle, or $650.00, whichever is less. See Fla. Stat. § 501.975(4).

In this case, Claimant paid a total sale price of $63,066.00. It is agreed here that the threshold amount was the $650.00, as that was the lesser amount. Respondent testified at the hearing that the cost of repair that was submitted to Nissan for reimbursement was $1,012.12. Moreover, Claimant testified that the Union City Nissan shop foreman received an invoice from Respondent showing the repair work that was performed on the vehicle to fix the damage the vehicle sustained, and that invoice reflected the $1,012.12 amount. The invoice was also entered into evidence. Notwithstanding the evidence, Arbitrator ruled that Respondent did not have a duty

8

to disclose to Claimant the past damage to the vehicle. Arbitrator based his decision on Respondent's testimony that despite submitting a claim to Nissan for $1,012.12, Respondent only actually paid $456.78. However, no evidence on or off the record was offered to corroborate Respondent's testimony. In fact, Respondent even testified that the $456.78 amount doesn't appear anywhere (Arbitration Hearing Transcript Vol. 2 pg. 59 ¶¶ 7-10), and that Respondent did not submit that $456.78 amount to Nissan as the cost of repairs. (Arbitration Hearing Transcript Vol. 2 pg. 59 ¶¶ 11-15).

Despite the lack of corroboration of any other witness or any document tending to prove that the actual cost of repair was $456.78, and despite submitting an invoice created by Respondent clearly showing the cost of repair to be $1,012.12, coupled with Respondent's own testimony that it submitted a claim to Nissan for $1,012.12 as the cost of repair, Arbitrator ruled that the threshold amount to trigger disclosure had not been met because $456.78 was less than $650.00. Arbitrator's ruling on Petitioner's claim shows a complete departure from the law, and the ruling should be vacated. Additionally, allowing Respondent car dealer to escape its statutory responsibility to make material disclosures to consumers by asserting that the cost invoice submitted for reimbursement was inflated to make a profit in an insurance claim clearly violates public policy.

***Respondent Violated FDUTPA by Selling Claimant a "Demo" Vehicle Represented to be a "New" Vehicle, and the Arbitration Award in Favor of Respondent Departs from the Law and Violates Public Policy***

Section 501.976(3) Florida Statutes makes it a violation of FDUTPA for a dealer to represent the previous usage or status of a vehicle to be something that it is not. See Fla. Stat. § 501.976(3). It remained undisputed throughout the arbitration that when all the sales paperwork incorrectly indicated that the vehicle was "new". It is also undisputed by the parties that the vehicle was not "new" but was a "demonstrator." Despite Respondent's admissions and all

9

evidence, the arbitrator made a finding that the vehicle was a "new" vehicle. After this erroneous finding, the arbitrator failed to address damages at all. Arbitrator's ruling that the vehicle was "new" should be vacated as a complete departure from the law.

The arbitration award is arbitrary and demonstrates a manifest disregard for the law. A manifest disregard for the law, in contrast to a misinterpretation, misstatement or misapplication of the law, can constitute grounds to vacate an arbitration decision. Montes 128 F.3d at 1462. There is nothing in the record or the arbitration award itself to suggest that refutes the inference by Petitioner that the law and the evidence were ignored.

The award also clearly violates public policy. The arbitrator completely ignored and contradicted stipulations and admissions by the parties. Parties should be encouraged to make stipulations and simplify the issues before an arbitrator.

WHEREFOR Petitioner respectfully requests that this Court enter an order vacating the arbitration award and remand for referral to a new arbitrator.

Dated: December 14, 2017.                    Respectfully submitted,

                                                             The Law Office of Patrick J. Cremeens, P.L.

/s/ Jeanne Cremeens
Patrick J. Cremeens, Esq.
Fla. Bar No. 0025848
Jeanne M. Cremeens, Esq.
Fla. Bar No. 0026007
4707 W. Gandy Boulevard, Suite 8
Tampa, Florida 33611
Phone (813) 839-2000 / Fax (813) 839-3500
Primary e-mail:   admin@cremeenslaw.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing document has been furnished to Craig H. Blinderman, Esq., of Kurkin Forehand Brandes at cblinderman@kfb-law.com on **December 14**, 2017.

/s/Jeanne M. Cremeens
Jeanne M. Cremeens, Esq.
Fla. Bar No. 0026007